UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
SOUTHEASTERN DIVISION

| | |
|---|---|
| DONNA WEST, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | No. 1:07CV106 CAS |
| ) | (TIA) |
| MICHAEL J. ASTRUE, ) | |
| COMMISSIONER OF SOCIAL SECURITY, ) | |
| ) | |
| Defendant. ) | |

**REPORT AND RECOMMENDATION**

This matter is before the Court under 42 U.S.C. § 1383(c)(3) for judicial review of the denial of Plaintiff's application for Supplemental Security Income under Title XVI of the Social Security Act. The case was referred to the undersigned pursuant to 28 U.S.C. § 636(b).

**Procedural History**

On May 24, 2005, Plaintiff filed an application for Supplemental Security Income, alleging disability since January 1, 1991, due to diabetes, glaucoma, deafness, a bladder condition, and arthritis. (Tr. 11, 34, 41-42, 61) The application was denied, after which Plaintiff requested a hearing before an Administrative Law Judge (ALJ). (Tr. 15, 30, 34-38) On February 2, 2006, Plaintiff appeared at a hearing before the ALJ. (Tr. 205-219) On November 28, 2006, the ALJ issued a decision concluding that Plaintiff was not under a disability as defined by the Social Security Act at any time since May 24, 2005, the date she filed her application. (Tr. 9-14) The Appeals Council denied Plaintiff's request for review on May 10, 2007. (Tr. 2-4) Thus, the determination of the ALJ stands as the final decision of the Commissioner.

## Evidence Before the ALJ

At the hearing before the ALJ, Plaintiff was represented by counsel. Plaintiff testified that she was born on August 31, 1960 and was 45 years-old. She completed the 9th grade and was able to read, write, and keep a checkbook. Plaintiff was not married, but she had two children under the age of 18. Her children lived with her in a house. (Tr. 207-208)

Plaintiff further testified that she weighed 130 pounds and measured 5 feet 1 inch. Her source of income was chid support. Plaintiff had a Medicaid card and a driver's license. She stated that she drove to go grocery shopping, shopping, and to doctors' offices. Plaintiff did not drive much at night because the lights bothered her. (Tr. 208-209)

Plaintiff testified that she had not worked for the past 15 years. She believed that she was unable to do any kind of work. Plaintiff attributed her inability to work to diabetes, cramps, and arthritis in her hands and elbows. She stated that her diabetes causes her legs to cramp or go numb. Plaintiff was diagnosed with diabetes in 2003. Her diabetes medication was Actos. Plaintiff also suffered from gluacoma. Plaintiff underwent eye surgeries in 1999 and 2000. In addition, Plaintiff testified that she had hearing problems, although she could hear the ALJ during the hearing. (Tr. 209-210)

Plaintiff also testified that she experienced heart problems a year ago. She continued to have chest pains about once a month. Plaintiff stated that recently the pain had been bad. Although she has nitroglycerine, Plaintiff had not used it. Further, Plaintiff testified that she experienced back pain due to arthritis in her back, neck, and shoulders. Although Plaintiff had this pain for a couple of years, her doctors did not prescribe any medication. Plaintiff described the pain as "real stiff" and "like a spasm". The day before the hearing, Plaintiff woke up at five o'clock a.m. with shoulder pain.

She rated the pain as a ten on a scale of one to ten. Plaintiff stated that the pain lasted all day long but that she took some Tylenol Arthritis medication before she went to bed, which helped her sleep. Plaintiff further testified that nothing precipitated her back and shoulder pain. (Tr. 210-212)

Plaintiff opined that the arthritic pain in her hands, shoulder and back would keep her from being able to work. Her hands cramped and stiffened up, and she had trouble walking. Plaintiff explained that she experienced cramps in her legs from a "rigid toe". Plaintiff took Quinine Sulphate for her cramps. In addition, Plaintiff took Lipitor for her cholesterol and Ranitidine for her stomach. (Tr. 212-214)

Plaintiff testified that she could sit for 30 to 45 minutes before becoming uncomfortable. Plaintiff could not stand at a workstation throughout a full work day because of her legs. She stated that she could not do anything for a long period of time. However, Plaintiff could bend over and touch her knees and stoop down and get back up. She believed that she could only lift and carry four or five pounds off and on all day. She could carry a gallon of milk around, but not constantly. Plaintiff also testified that she had trouble pushing and pulling things. She could not pick up anything heavy with her hands, and her hands went numb or cramped, sometimes every day. Cleaning and doing dishes caused her hands to cramp. Plaintiff testified that she woke up around 6:45 a.m. and went to bed around 11:00 p.m. During the day, Plaintiff ate, did dishes, and did laundry. She stated that she was able to do her housework pretty well, spending 3 to 4 hours a day on housekeeping. Plaintiff's hobbies included embroidery; however, she could not embroider as much as she used to because she had trouble focusing her eyes. Plaintiff was able to care for herself. She smoked about 5 cigarettes a day. Her children performed the outside work. Plaintiff further stated that her balance was bad due to her ear problems and diabetes. (Tr. 214-218)

On July 11, 2005, Plaintiff completed a Function Report - Adult. Plaintiff's daily activities included cooking, doing dishes, doing laundry, cleaning, talking on the phone, and watching TV. She spent 6 to 8 hours a day performing household chores. (Tr. 65-72)

**Medical Evidence**

In January 2003, Plaintiff complained of recurrent urinary tract infections for the past 3 years. She underwent a cysto and hydro distention of the bladder on January 17, 2003. Dr. S. D. Madduri reported a postoperative diagnosis of interstitial cystitis and urethral stenosis and discharged Plaintiff in a satisfactory condition. (Tr. 93-104)

Plaintiff reported to the Samuel Medical Clinic for check-ups and laboratory work in 2003 and 2004. (Tr. 160-164) She complained of sore throat, sinus problems, and congestion; right foot pain, right hip pain, and back pain; a rash; the flu; urinary tract infection symptoms; and abdominal pain and nausea. Plaintiff received medications for her symptoms. (Tr. 149-164)

On June 9, 2004, Plaintiff purchased a Hearing Aid for her left ear from Heartland Hearing. Plaintiff previously purchased a Hearing Aid for her right ear from Miracle-Ear. Auditory tests revealed a sensorineural hearing loss in the left ear, moderate to severe. The Hearing Instrument Specialist opined that the left ear should do well with proper amplification. (Tr. 134)

On October 29, 2004, Plaintiff underwent a myocardial perfusion scan after complaining of chest pain. The test revealed a small area of ischemia involving the anterior wall. (Tr. 184) In November 2004, Dr. Bryan S. Beck performed a left ventriculogram; aortic gradient followed by pullback; selective coronary angiogram; and perclose deployment. The tests revealed minimal coronary artery disease; normal left ventricular function; and no significant valvular disease. Dr. Beck recommended risk factor modification and medical therapy. (Tr. 199-200)

On January 10, 2005, Plaintiff complained of a painful second toe and right foot. The examination at the Samuel Medical Clinic revealed a wart on her second toe. (Tr. 148) In March 2005, Plaintiff complained of numbness in her left leg. Upon examination, Plaintiff exhibited CVA tenderness in her back. (Tr. 146)

On April 4, 2005, Plaintiff underwent an eye examination, which revealed 20/20 vision. The examining physician diagnosed diabetes mellitus, chronic open angle glaucoma, and vessel changes. (Tr. 140) In May 2005, Plaintiff presented to the Samuel Medical Clinic with complaints of diarrhea and enlarged lymph nodes. The assessment was gastroenteritis and diarrhea. (Tr. 144) On June 8, 2005, Plaintiff complained of a painful wart on her right foot. Plaintiff also reported some numbness and a history of diabetes. Examination revealed good muscle strength with adequate range of motion. Plaintiff appeared to be in good general health with no other dermatological or muscular problems present. The physician assessed diabetes with diabetic neuropathy; early onychomycosis; and verruca right second digit. He prescribed Lac-Hydrin for dry cracked heels; Metanx for early stage diabetic neuropathy; and salt water soaks for her wart. (Tr. 197)

On June 11, 2005, Plaintiff walked into the Emergency Room at Ripley County Memorial Hospital, complaining of neck pain and left shoulder pain. Plaintiff rated her pain as an 8 out of 10. An x-ray of the cervical spine revealed no fracture or dislocation. There was a reversal of the normal lordotic curve but no significant degenerative changes. Plaintiff's pain decreased to a 1-2 after medication. (Tr. 123-129)

On June 16, 2005, Plaintiff again presented to the Samuel Medical Clinic with complaints of left shoulder pain, earache, and lumbar spine pain. (Tr. 143) CT scans of the left shoulder, cervical spine, and lumbar spine indicated early degenerative changes of the acromioclavicular joint;

5

straightening of the normal lordotic curve; and early degenerative arthritis and slight scoliosis. (Tr. 170-172)

A CT scan of the cervical spine performed on June 29, 2005 revealed no significant bulging or herniated disc and no significant degenerative changes. (Tr. 167) Plaintiff underwent additional testing on that same date. The CT scan of the left shoulder revealed no evidence of acute bony change. (Tr. 168) The CT scan of the lumbar spine demonstrated mild posterior bulging disc at L5-S1 level and arteriosclerotic plaque in the iliac arteries. (Tr. 169)

In July 2005, Plaintiff reported no chest pain over the past few weeks. After reviewing an x-ray and the CT scan reports, a nurse practitioner at the Samuel Medical Clinic assessed cervical neck pain; lumbar spine pain; and lumbar disc bulge. The nurse practitioner recommended Motrin for pain. (Tr. 107) On July 27, 2005, Plaintiff underwent an eye examination. Plaintiff reported blurred vision. Her visual acuity was 20/20 in both eyes. The physician diagnosed diabetes mellitus; chronic open angle glaucoma, and vessel changes. (Tr. 137)

On August 19, 2005, Plaintiff complained of stomach pain and sinus trouble. The nurse practitioner at Samuel Medical Clinic assessed diabetes mellitus; hyperlipidemia; allergic/sinus congestion; and gastroesophageal reflux disease (GERD). Plaintiff received several medications. (Tr. 108) Plaintiff again complained of sinus congestion in September 2005. The nurse practitioner assessed acute sinusitis and leg cramps. (Tr. 109-110) On September 27, 2005, Plaintiff returned to the Samuel Medical Clinic with complaints of right hand and arm pain and right shoulder pain. The nurse practitioner noted that Plaintiff's acute sinusitis was improved and prescribed an x-ray and Naproxyn. (Tr. 111)

On October 27, 2005, Plaintiff again visited the Samuel Medical Clinic for lab work. An

6

examination revealed that Plaintiff had a left wrist ganglion cyst and tenderness in the left index finger with arthritic enlargement of the joint. The nurse practitioner assessed diabetes mellitus; hyperlipidemia; osteoarthritis at multiple sites; and a left wrist ganglion cyst. Plaintiff received a left wrist splint and refills of her medications. (Tr. 112) An examination in December 2005 revealed arthritic changes in Plaintiff's hands. The nurse practitioner noted diabetes mellitus; hyperlipidemia; osteoarthritis at multiple sites; and fatigue. (Tr. 113)

Also in December 2005, Plaintiff underwent an eye examination. Plaintiff's visual acuity was 20/25 in both eyes. The physician diagnosed diabetes mellitus; chronic open angle glaucoma; vessel changes; and an existing retinal tear in the left eye. (Tr. 120)

## The ALJ's Determination

In a decision dated November 28, 2006, the ALJ found that Plaintiff had not been under a "disability," as defined by the Social Security Act, since May 24, 2005, the date she filed her application. (Tr. 14) The ALJ noted that Plaintiff had not engaged in substantial gainful activity since November 1, 1991, her alleged onset date. Further, Plaintiff had the severe impairments of diabetes mellitus and osteoarthritis. However, Plaintiff did not have an impairment or combination of impairments which met or medically equaled any of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (Tr. 11)

After careful consideration of the entire record, the ALJ determined that Plaintiff had the residual functional capacity ("RFC") to lift ten pounds at a time; sit approximately six hours during an eight-hour workday; and walk and stand two hours during an eight-hour workday. In addition, the ALJ noted that Plaintiff should avoid ladders, ropes, scaffolds, and hazards such as machinery and heights. Because sedentary work did not usually require the use of ladders, ropes, scaffolds, or

7

hazards, the ALJ found that the postural limitations or restrictions did not significantly erode the occupational base for the full range of unskilled sedentary work. (Tr. 11)

Further, the ALJ noted that Plaintiff was 46 years old with a history of recurrent urinary tract infections. She also had diabetes mellitus since 2003, which was well-controlled. Although Plaintiff had decreased sensory status due to early stage diabetic neuropathy the ALJ noted good muscle strength and adequate range of motion in all joints. The ALJ additionally found that Plaintiff had a history of bilateral hearing loss, which should improve with proper amplification. Plaintiff's coronary arteries were in excellent condition, and her visual acuity was 20/25 in each eye as of July 2005, without noted diabetic changes. The ALJ also acknowledged Plaintiff's complaints of left shoulder tenderness and lumbar spine tenderness. The ALJ found that x-rays showed early degenerative changes, and a CT scan of the lumbar spine revealed a mild posterior bulging disc at the L5-S1 level, with arteriosclerotic plaque in the iliac arteries. In addition, the ALJ noted Plaintiff's right hand and arm pain, which resulted in a diagnosis of osteoarthritis of multiple sites and a ganglion cyst of the left wrist. (Tr. 12)

Although the ALJ found that Plaintiff's medically determinable impairment could reasonably be expected to produce some of the alleged symptoms, her statements regarding the intensity, persistence, and limiting effects of those symptoms were not entirely credible. The ALJ relied upon Plaintiff's activities of daily living form, wherein she stated that she cared for her father; fixed complete meals; did the cleaning and the laundry; and drove and shopped without problems. In addition, Plaintiff watched TV and spoke with friends on the phone without complaints of hearing impairment. Plaintiff stated that she could still do everything. (Tr. 12)

Further, the ALJ noted that Plaintiff was able to answer questions in a clear, quick, and logical

8

manner throughout the hearing. She did not display signs of hearing loss. In addition, the ALJ found that Plaintiff's visual acuities, which demonstrated no diabetic changes, did not meet Listing 2.02. Although Plaintiff complained of recurrent urinary tract infections, the record contained no indication that the infections were of such severity to prevent her from working. In addition, the ALJ found that Plaintiff's diabetes mellitus had not resulted in any diabetic complications. Further, Plaintiff's osteoarthritis diagnosis failed to include any ongoing findings of loss of motion, spasm, heat ,redness, tenderness, swelling edema, or arthritic deformity. The ALJ also noted that the medical records failed to document that any treating physician found or imposed long term, significant, and adverse mental or physical limitations on Plaintiff's functional capacity. Thus, the ALJ determined that Plaintiff's allegations that she was unable to work were inconsistent with the evidence as a whole, unpersuasive, and incredible. (Tr. 13)

The ALJ also relied upon Plaintiff's sporadic work history, noting that her last reported earnings were from 1990 and that, prior to 1990, Plaintiff had eight years with no earnings or earnings less than $1,000. The ALJ found that monthly supplemental security earnings would exceed many of the years posted on Plaintiff's earnings record, undermining her credibility and motivating her to exaggerate her symptoms. (Tr. 13)

The ALJ determined that Plaintiff had no past relevant work and was defined as a younger individual. Although Plaintiff's education was limited, she was able to communicate in English. Transferability of job skills was not an issue due to Plaintiff's lack of past relevant work. The ALJ considered Plaintiff's age, education, work experience, and RFC, finding that a significant number of jobs existed in the national economy that Plaintiff could perform. The ALJ relied upon the Medical-Vocational Guidelines as a framework to direct a finding of "not disabled." Thus, the ALJ

9

concluded that Plaintiff had the RFC for the full range of sedentary work and had not been under a disability, as defined by the Social Security Act, since May 24, 2005, the date she filed her application. (Tr. 13-14)

**Legal Standards**

A claimant for social security disability benefits must demonstrate that he or she suffers from a physical or mental disability. 42 U.S.C. § 423(a)(1). The Social Security Act defines disability as "the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period not less than 12 months." 20 C.F.R. § 404.1505(a).

To determine whether a claimant is disabled, the Commissioner engages in a five step evaluation process. See 20 C.F.R. § 404.1520(b)-(f). Those steps require a claimant to show: (1) that plaintiff is not engaged in substantial gainful activity; (2) that she has a severe impairment or combination of impairments which significantly limits her physical or mental ability to do basic work activities; or (3) she has an impairment which meets or exceeds one of the impairments listed in 20 C.F.R., Subpart P, Appendix 1; (4) she is unable to return to her past relevant work; and (5) her impairments prevent her from doing any other work. Id.

The Court must affirm the decision of the ALJ if it is supported by substantial evidence. 42 U.S.C. § 405(g). "Substantial evidence 'is less than a preponderance, but enough so that a reasonable mind might find it adequate to support the conclusion.'" Cruse v. Chater, 85 F. 3d 1320, 1323 (8th Cir. 1996) (quoting Oberst v. Shalala, 2 F.3d 249, 250 (8th Cir. 1993)). The Court does not re-weigh the evidence or review the record de novo. Id. at 1328 (citing Robinson v. Sullivan, 956 F.2d 836, 838 (8th Cir. 1992)). Instead, even if it is possible to draw two different conclusions from the

evidence, the Court must affirm the Commissioner's decision if it is supported by substantial evidence. Id. at 1320; Clark v. Chater, 75 F.3d 414, 416-17 (8th Cir. 1996).

To determine whether the Commissioner's final decision is supported by substantial evidence, the Court must review the administrative record as a whole and consider: (1) the credibility findings made by the ALJ; (2) the plaintiff's vocational factors; (3) the medical evidence from treating and consulting physicians; (4) the plaintiff's subjective complaints regarding exertional and non-exertional activities and impairments; (5) any corroboration by third parties of the plaintiff's impairments; and (6) the testimony of vocational experts when required which is based upon a proper hypothetical question that sets forth the plaintiff's impairment(s). Stewart v. Secretary of Health & Human Servs., 957 F.2d 581, 585-586 (8th Cir. 1992); Brand v. Secretary of Health Educ. & Welfare, 623 F.2d 523, 527 (8th Cir. 1980).

The ALJ may discount plaintiff's subjective complaints if they are inconsistent with the evidence as a whole, but the law requires the ALJ to make express credibility determinations and set forth the inconsistencies in the record. Marciniak v. Shalala, 49 F.3d 1350, 1354 (8th Cir. 1995). It is not enough that the record contain inconsistencies; the ALJ must specifically demonstrate that he or she considered all the evidence. Id. at 1354; Ricketts v. Secretary of Health & Human Servs., 902 F.2d 661, 664 (8th Cir. 1990).

When a plaintiff claims that the ALJ failed to properly consider subjective complaints, the duty of the Court is to ascertain whether the ALJ considered all of the evidence relevant to plaintiff's complaints under the Polaski[1] standards and whether the evidence so contradicts plaintiff's subjective

---

[1]The Polaski factors include: (1) the objective medical evidence; (2) the subjective evidence of pain; (3) any precipitating or aggravating factors; (4) the claimant's daily activities; (5) the effects of any medication; and (6) the claimants functional restrictions. Polaski v. Heckler,

11

complaints that the ALJ could discount his testimony as not credible. Benskin v. Bowen, 830 F.2d 878, 882 (8th Cir. 1987). If inconsistencies in the record and a lack of supporting medical evidence support the ALJ's decision, the Court will not reverse the decision simply because some evidence may support the opposite conclusion. Marciniak , 49 F.3d at 1354.

## Discussion

The Plaintiff first argues that the ALJ's determination was not supported by substantial evidence. Plaintiff also contends that the ALJ erred by concluding that the Plaintiff did not have an impairment or combination of impairments which significantly limited her capacity to perform basic work-related activities. In addition, Plaintiff asserts that the ALJ erred in discrediting the Plaintiff's complaints of pain by ignoring objective medical evidence. Finally, Plaintiff maintains that the ALJ erred by failing to obtain vocational testimony. The Defendant, on the other hand, contends that the ALJ properly evaluated Plaintiff's impairments; properly assessed Plaintiff's credibility; properly formulated Plaintiff's RFC; and properly determined that Plaintiff could perform work existing in the national economy. Thus, the Defendant maintains that substantial evidence supports the ALJ's determination.

The undersigned agrees with the Defendant that the ALJ's determination is supported by substantial evidence. Although Plaintiff first argues that substantial evidence does not support the determination because Plaintiff possesses an impairment and/or combination of impairments which equal one in the Listings, Plaintiff failed to specify which listing her impairments met. As properly stated by the Defendant, the Plaintiff bears the burden of demonstrating that she meets all of the specified criteria for any listed impairment. In Johnson v. Barnhart, the Eighth Circuit Court of

---

739 F.2d 1320, 1322 (8th Cir. 1984).

Appeals held that "[t]he burden of proof is on the plaintiff to establish that his or her impairment meets or equals a listing." 390 F.3d 1067, 1070 (8th Cir. 2004) (citation omitted). Further, "[t]o meet a listing, an impairment must meet all of the listing's specified criteria." Id. (citation omitted).

While Plaintiff lists her multiple impairments, she fails to mention which listing or listings these various alleged impairments meet. Thus, the undersigned finds that the ALJ did not err in finding that the Plaintiff did not have an impairment or combination of impairments that met or medically equaled any of the listed impairments. (Tr. 11)

Plaintiff next claims that the ALJ erred by concluding that the Plaintiff did not have an impairment or combination of impairments which significantly limited her capacity to perform basic work-related activities. Specifically, Plaintiff contends that the ALJ erroneously relied on the grids to find Plaintiff not disabled. Instead, Plaintiff argues that the ALJ should have called a vocational expert. The Defendant maintains that the ALJ's reliance on the Medical Vocational Guidelines was proper, as Plaintiff had no disqualifying medically-established nonexertional limitations.

The undersigned finds that the ALJ properly relied on the Medical Vocational Guidelines to determine that Plaintiff could perform the full range of sedentary work. Vocational expert testimony is required only "when the claimant has nonexertional impairments, which make use of the medical-vocational guidelines, or 'grids,' inappropriate." Banks v. Massanari, 258 F.3d 820, 827 (8th Cir. 2001) (citations omitted). However, "[i]f the ALJ properly determines that a claimant's RFC is not significantly diminished by a nonexertional limitation, then the ALJ may rely exclusively upon the Grids and is not required to hear the testimony from a VE." Dodson v. Astrue, No. 6:07-cv-6049, 2008 WL 2783454, at *5 (W.D. Ark. July 17, 2008). Only where the ALJ properly discredits plaintiff's complaint of a nonexertional impairment, such as pain, may the ALJ rely on the grids.

Reynolds v. Chater, 82 F.3d 254, 258-259 (8th Cir. 1996) (citations omitted).

In the instant case, the ALJ properly discredited Plaintiff's subjective complaints of disabling pain by finding inconsistencies in the record under the Polaski standards. The ALJ first assessed the medical evidence, noting that none of Plaintiff's treating physicians ever found or imposed any long term, significant, and adverse mental or physical limitations on Plaintiff's functional capacity. (Tr. 13) Further, while Plaintiff had the severe impairments of diabetes mellitus and osteoarthritis, her diabetes was well-controlled and absent any diabetic complications. (Tr. 11-13) In addition, The medical records did not indicate any ongoing findings of loss of motion, spasm, heat, redness, tenderness, swelling edema, or arthritic deformity to support Plaintiff's claim of disability due to osteoarthritis. (Tr. 13) The lack of objective medical evidence demonstrating disabling pain supports the ALJ's determination that Plaintiff is not disabled. See Choate v. Barnhart, 457 F.3d 865, 871 (8th Cir. 2006) (discounting Plaintiff's allegations of disability where unsupported by medical evidence and other evidence in the record). Furthermore, the ALJ noted that the medical opinions indicated no limitations resulting from diabetes or osteoarthritis. (Tr. 13) See Forte v. Barnhart, 377 F.3d 892, 896 (8th Cir. 2004) (ALJ properly noted that medical professionals had not indicated that plaintiff was precluded from performing work).

While the ALJ may not discount Plaintiff's allegations based solely on the objective medical evidence, the ALJ may disbelieve subjective complaints if the evidence as a whole contains inconsistencies and the ALJ expressly discredits Plaintiff's complaints of disability. Goff v. Barnhart, 421 F.3d 785, 792 (8th Cir. 2005). Here, the ALJ also assessed Plaintiff's testimony, including her daily activities. The ALJ noted that Plaintiff was able to perform the household activities, including caring for her father; cooking meals; cleaning; doing laundry; driving; and shopping. Plaintiff also

watched TV and talked to friends on the phone with no reported pdroblems. (Tr. 12) These activities are inconsistent with her allegations of disabling pain. Gwanthey v. Chater, 104 F.3d 1043, 1045 (8th Cir. 1997) (holding that Plaintiff's ability to perform housework among other activities precluded a finding of disability).

Therefore, the undersigned finds that substantial evidence supports the ALJ's credibility determination that Plaintiff's statements concerning the intensity, persistence, and limiting effects of her alleged symptoms are not entirely credible. Thus, the ALJ properly relied on the grids, and did not need vocational expert testimony, in determining that Plaintiff could perform work in the national economy.

Plaintiff next asserts that the ALJ erred in discrediting her complaints of pain by ignoring supporting objective medical evidence. However, as stated above, the ALJ properly assessed Plaintiff's complaints of pain. First, the ALJ did assess all the objective medical evidence, noting that neither the medical records nor the medical opinions supported Plaintiff's allegations of disabling pain. (Tr. 12-13) In addition, the Plaintiff's daily activities contradicted her subjective complaints, as she stated that she was still able to perform household chores with little problem. (Tr. 65-69) Therefore, the ALJ did not err in discrediting the Plaintiff's complaints of pain.

Plaintiff finally contends that the ALJ erred by failing to obtain vocational testimony.[2] The undersigned previously addressed this allegation above. Vocational expert testimony is required only where the Plaintiff has a nonexertional impairment. Banks v. Massanari, 258 F.3d 820, 827 (8th Cir. 2001) (citations omitted). However, if the ALJ properly determines that a nonexertional limitation

---

[2] Portions of Plaintiff's Brief , and the final argument in particular, appear to refer to a male individual unrelated to this case.

does not significantly diminish the Plaintiff's Residual Functional Capacity, then the ALJ is not required to hear the testimony from a VE. Dodson v. Astrue, No. 6:07-cv-6049, 2008 WL 2783454, at *5 (W.D. Ark. July 17, 2008). Here, the ALJ found that Plaintiff's nonexertional impairments did not diminish her ability to perform the full range of sedentary work. Thus, the ALJ was not required to employ a vocational expert.

Accordingly,

**IT IS HEREBY RECOMMENDED** that the final decision of the Commissioner denying social security benefits be **AFFIRMED.**

The parties are advised that they have eleven (11) days in which to file written objections to this Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1), unless an extension of time for good cause is obtained, and that failure to file timely objections may result in a waiver of the right to appeal questions of fact. See Thompson v. Nix, 897 F.2d 356 (8th Cir. 1990).

/s/ Terry I. Adelman
UNITED STATES MAGISTRATE JUDGE

Dated this  29th  day of August, 2008.